UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMPLOYERS INSURANCE COMPANY
OF WAUSAU,

                     Plaintiff,

      -v-

MUNICH REINSURANCE AMERICA, INC.,

                 Defendant.

Docket No.:  10-CV-3558 (PKC)

## MUNICH REINSURANCE AMERICA, INC.'S
## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

Bruce M. Friedman (BF9074)
Crystal Monahan (CM1415)
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue, 11th Floor
New York, New York 10017
Phone: 212-447-4644
Fax: 212-953-2462

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      PLAINTIFF IS NOT ENTITLED TO ANY PRESUMPTION OF
         CONFIDENTIAL COMMUNICATIONS BECAUSE PLAINTIFF
         HAS NOT ALLEGED OR PROVEN A SUBSTANTIAL
         RELATIONSHIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

         A.      Plaintiff Must FIRST Demonstrate a Substantial
                  Relationship Exists Between the Present and Prior
                  Arbitrations; Only Then Will a Rebuttable Presump-
                  tion of Confidential Communications Be Triggered . . . . . . . . . . . . . 11

         B.      Plaintiff Has Not Alleged Any Facts Which Tend to
                  Show a Substantial Relationship Between the Prior
                  and Pending Arbitrations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.     PLAINTIFF MUST DEMONSTRATE GOOD CAUSE FOR THE
         RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

         A.      Plaintiff Has Not Established That Applicable Law
                  Relieves It of Its Document Production Obligation . . . . . . . . . . . . . . 18

         B.      Plaintiff Has Not Demonstrated That Less Restrictive
                  Measures Are Insufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

Bruce M. Friedman (BF9074)
Crystal Monahan (CM1415)
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue, 11th Floor
New York, New York 10017
Phone: 212-447-4644
Fax: 212-953-2462
Attorneys for Munich Reinsurance America, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
EMPLOYERS INSURANCE COMPANY                     Docket No.: 10-CV-3558 (PKC)
OF WAUSAU,

                  Plaintiff,            **MUNICH REINSURANCE AMERICA,**
                                     **INC.'S MEMORANDUM OF LAW IN**
              -v-            **OPPOSITION TO PLAINTIFF'S**
                                   **MOTION FOR PROTECTIVE ORDER**

MUNICH REINSURANCE AMERICA, INC.,

                         Defendant.

      Defendant, MUNICH REINSURANCE AMERICA, INC. ("Munich Re"), respectfully

submits this Memorandum of Law in Opposition to Plaintiff's Motion for Protective Order.

      Munich Re has been attempting to discover the factual basis for Plaintiff's claim since

Plaintiff initiated this action, and for several months Plaintiff has steadfastly rebuffed Munich

Re's attempts to obtain information or an explanation.  Plaintiff now seeks a drastic and

unprecedented protective order that would completely relieve it of any obligation to produce

documents to support its conclusory and unsubstantiated allegations.

      Plaintiff must be forced to provide support (other than self-serving statements) for its

allegations and Munich Re is entitled to a fair opportunity to cross-examine Plaintiff concerning

its assertions.  Plaintiff should not be permitted to stymie Munich Re's legal right to pursue

Plaintiff for non-payment of a reinsurance claim simply by making unsupported allegations

regarding Munich Re's counsel.  If Plaintiff wants to pursue this action, it should produce

support for its claims.  If it will not, the action should be dismissed.

## FACTUAL BACKGROUND

Munich Re, through its chosen counsel Rubin, Fiorella & Friedman LLP ("RFF"),

initiated arbitration against Plaintiff on April 8, 2010, by service of an arbitration demand letter.[1]

Munich Re seeks payment from Plaintiff pursuant to a reinsurance treaty between Munich Re and

Plaintiff.  The amount Munich Re claims is due from Plaintiff arises from a payment made by

Munich Re to another insurance company, Allianz Insurance Company ("Allianz"), with respect

to a claim by Allianz to Munich Re arising from payments made by Allianz on behalf of its

insured, the Roman Catholic Archdiocese of Los Angeles ("ADLA"), to settle clergy sexual

abuse claims made against the ADLA.

On April 27, 2010, Plaintiff's in-house counsel acknowledged Munich Re's arbitration

demand, and requested that RFF withdraw as counsel for Munich Re because RFF had

represented Plaintiff in a previous arbitration between Wausau and another party – the *Paladin v*

*Wausau* arbitration.[2]  The very next day, on April 28, 2010, Plaintiff filed the instant action

seeking disqualification. (Docket # 1)[3]  Plaintiff did not wait for Munich Re and RFF to

investigate and respond to its April 27, 2010, letters before filing this action.

---

[1] Munich Re's arbitration demand is attached as **Exhibit 1** to the accompanying Declaration of Crystal Monahan, Esq. (Monahan Aff.) in Opposition to Plaintiff's Motion for Protective Order.

[2] *See* Monahan Aff., Ex. 2 at 2.

[3] *See* Declaration of Stacie Young, Esq. in Support of Plaintiff's Motion for Protective Order (Young Aff.), Ex. C.

The Complaint contains allegations regarding the existence of a prior arbitration, *Paladin v. Wausau*, in which RFF represented Plaintiff, and the existence of the present arbitration between Munich Re and Plaintiff.[4]  The Complaint further alleges that RFF is in violation of Rule 1.9 of New York's Rules of Professional Conduct.[5]  There are no factual allegations in the Complaint regarding any relationship between the pending and prior arbitration proceedings, nor are there any allegations regarding the disclosure of any confidential communications that are relevant to the pending arbitration proceeding.

On May 3, 2010, RFF wrote to counsel for Plaintiff, on behalf of Munich Re, asking for the Complaint to be withdrawn because it failed to state a claim.[6]  Plaintiff's counsel responded on May 6, 2010, asserting Plaintiff "has a good faith basis" for the Complaint, and refused to discontinue the action.[7]

After retrieving its materials regarding the *Paladin* matter from storage and conducting further investigation into whether there appeared to be any factual basis for Plaintiff's claim, RFF again wrote to Plaintiff's counsel requesting the Complaint be withdrawn or provide an explanation of the factual basis for the Complaint.[8]  Plaintiff's May 20, 2010, response provided no information regarding the alleged factual basis for Plaintiff's claim.[9]

---

[4] *See* Young Aff. Ex. C ¶¶ 15-22.

[5] *See Id.* at ¶ 30.

[6] *See* Monahan Aff. Ex. 3 at 6.

[7] *See* Monahan Aff. Ex. 4 at 1.

[8] *See* Monahan Aff. Ex. 5 at 1.

[9] *See* Monahan Aff. Ex. 6.

During the parties' Rule 26(f) conference, which was conducted via conference call on June 4, 2010, Plaintiff's in-house counsel suggested that Plaintiff's claim might be based on discussions that allegedly took place between RFF and Plaintiff regarding which arbitrators/umpires Plaintiff did and did not like.  However, he did not explain how that sort of information could be used against Plaintiff in an arbitration concerning different contracts, different underlying claims, and where Plaintiff has a different risk capacity in the reinsurance contractual relationship.[10]

On June 9, 2010, RFF sent a letter to this Court requesting a Pre-Hearing Conference, and explaining therein Plaintiff's repeated failure to identify the basis of their Complaint.[11]  Plaintiff's June 14 response essentially posits that it does not need to provide any factual details regarding the basis for its claim – other than alleging the existence of a prior representation of Plaintiff by RFF and a present representation adverse to Plaintiff.[12]

During the parties' preparation of the pre-conference letter provided to the Court on June 21, 2010, RFF again asked Plaintiff to provide some detail regarding the factual basis for its claim

---

[10]  In reinsurance arbitrations, the parties occupy one of two capacities: 1) the ceding insurer, who has issued the insurance policy, and 2) the assuming insurer, typically, a professional reinsurer, to whom a portion of the risk is transferred by the ceding insurer in exchange for the payment of a portion of the premium received for the policy.  When candidates for service on the three member arbitration panel are being vetted, cedants will favor candidates who have background or reputations indicating that they are likely to support the position advocated by the cedant.  Reinsurers will advocate for candidates who have backgrounds or reputations indicating that they are likely to support the position advocated by the reinsurer.  In the *Paladin v. Wausau* arbitration, Wausau was the reinsured; in the pending arbitration, Wausau is the reinsurer.  Thus, any candidates that Wausau may have announced a disfavor for in the *Paladin* matter, would likely be acceptable candidates for Wausau in the Munich Re arbitration.

[11]  *See* Monahan Aff. Ex. 7 at 1-3.

[12]  *See* Monahan Aff. Ex. 8 at 2.

— as is required by this Court's May 3, 2010 Order. Plaintiff again declined, this time asserting that it had already provided factual details.[13]

On July 12, 2010, Munich Re served document requests on Plaintiff seeking information regarding the bases for Plaintiff's Complaint. On July 23, 2010, Munich Re served Interrogatories on Plaintiff seeking an explanation of the bases for Plaintiff's Complaint.

On August 10, 2010, counsel engaged in a conference call in which Plaintiff's counsel asserted that Plaintiff was not obligated to provide documents in response to Munich Re's document requests. Munich Re's counsel proposed an "attorney's eyes only" agreement, indicating that should be sufficient to protect Plaintiff's privileged and confidential information.[14] Munich Re's counsel also asked whether Plaintiff had ever given any thought to a confidentiality order.[15] Plaintiff's counsel advised she would ask her client, but Munich Re's counsel has never received a response to these queries.[16] A few hours after engaging in this conference call with Munich Re's counsel, Plaintiff's counsel served a letter on the Court requesting an informal conference so that Plaintiff could file a Motion for Protective Order.[17]

The following day, August 11, 2010, Plaintiff served responses and objections to Munich Re's document requests and interrogatories. Plaintiff objected to Munich Re's document requests

---

[13] *See* Monahan Aff. Exs. 9-10.

[14] RFF is cognizant of its continuing obligations to Wausau, and has not disclosed any confidential or privileged information or documents to Munich Re concerning the *Paladin v Wausau* arbitration.

[15] Munich Re's counsel first requested a draft confidentiality agreement from Plaintiff during the Rule 26(f) conference on June 4, 2010, and again mentioned it when the parties were preparing the initial pre-conference letter for the Court on June 21, 2010. *See* Monahan Aff. Ex. 9.

[16] *See* Monahan Aff. ¶ 5.

[17] *See* Monahan Aff. Ex. 11.

in their entirety, stating that it is not required to produce any documents in response to any of Munich Re's requests.[18]  Instead, it provided a log of all the allegedly 'confidential information' it possesses, stating this is the extent of its obligation.[19]

Plaintiff's Responses to Interrogatories assert, in very general terms, the categories of 'confidential information' RFF could have obtained during its prior representation of Plaintiff. For instance, Plaintiff asserts, in response to Interrogatory 2, that RFF acquired confidential information on the following topics:

a) Wausau's selection of its arbitrator and the process in which it engaged to reach that selection;

b) Wausau's views and concerns regarding the arbitrator appointed by Paladin;

c) Wausau's identification and nomination of candidates to serve as the umpire and the process in which it engaged to reach those selections;

d) Wausau's views and concerns regarding the candidates nominated for umpire by Paladin and the thought processes used to select which of those candidates Wausau would and did choose to eliminate from consideration;

e) Which umpire candidates nominated by Wausau were eliminated from consideration by Paladin and Wausau's views on the impact that those choices would have had on the substantive and procedural aspects of the arbitration;

f) Wausau's views on an strategy concerning an indemnification and hold harmless for the arbitration panel;

g) Wausau's views on and strategy concerning the arbitration being held confidential, by agreement of the parties or order of the arbitration panel;

h) Wausau's views on and strategy concerning methods of discovery to be used in the arbitration, as is true in almost all reinsurance arbitrations, because the parties'

---

[18] *See* Young Aff. Ex. F.

[19] *See* Young Aff. Ex. H.

arbitration agreements relieve the arbitration panel of being bound by the strict rules of law;

i)      Wausau's views on and strategy concerning the type of proceeding, i.e. decided on briefs without a hearing or a final hearing with live testimony;

j)      Wausau's views on and strategy concerning substantive reinsurance issues, such as: i) proper loss presentation; ii) access to records; iii) late notice; iv) untimely assertion of claim; v) follow-the-fortunes; and vi) follow-the-settlements; and

k)      Wausau's internal ceded and assumed reinsurance operating procedures and substantive views on general liability, ceded reinsurance and assumed reinsurance claim coverage issues addressed in both the *Wausau v Paladin Arbitration* and the *Paladin v Wausau Arbitration*, as said issues are present in all reinsurance arbitrations.[20]

As is discussed further below, these categories of so-called 'confidential information' are not confidential in these circumstances and cannot be used as a basis for a motion or action for disqualification.

Plaintiff's Responses to Interrogatories also identify at least one legal position taken by Plaintiff that is contrary to existing case law. In response to Interrogatory 3, Plaintiff asserts:

> Wausau begins by noting that its view of "substantial relationship" and the case law interpreting that term is whether the lawyer or law firm subject to being disqualified acquired or had the opportunity to acquire former client's "Confidential Information" that would be useful to the lawyer/law firm in its representation of its current client in a matter adverse to its former client. That said, the Underlying Arbitration is, and the *Wausau v Paladin* and *Paladin v Wausau Arbitrations* were, reinsurance arbitrations. Consequently, the Underlying Arbitration involves, or has the potential to involve, all of the issues and corresponding "Confidential Information" identified in Wausau's Response to Munich Re's Interrogatory No. 1. These facts mean that the Underlying Arbitration and the two *Paladin Arbitrations* have a "substantial relationship" as that term is used in Rule

---

[20] *See* Young Aff. Ex. E at 8-13.

1.9(a) of New York's Rules of Professional Conduct and the case law interpreting same.[21]

As is discussed further below, the case law interpreting "substantial relationship" contemplates an entirely different and much more stringent standard that Plaintiff's Responses to Interrogatories do not satisfy.

On August 13, 2010, Munich Re served a response to Plaintiff's letter to this Court requesting an informal conference. In that letter, Munich Re reiterated its willingness to enter into an "attorney's eyes only" agreement, and proposed other – less drastic – methods of protecting Plaintiff's privileged information.[22]

## ARGUMENT

Plaintiff is asking this Court to relieve it of producing any actual evidence to support its Complaint. Plaintiff is taking the position that the only discovery it must provide are vague, conclusory statements in response to Munich Re's Interrogatories, a privilege log, and (presumably) an affidavit from Plaintiff. Munich Re will not be able to effectively contest or cross-examine any of this 'discovery' because Plaintiff has not produced the actual evidence which supports or refutes Plaintiff's allegations.

Plaintiff's position regarding its burden of production and the instant request for relief are in direct contradiction to the Second Circuit's admonition that "there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former

---

[21] *See* Young Aff. Ex. E at 13-14.

[22] *See* Monahan Aff. Ex. 12 at 2.

counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel..." *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). The high standard of proof is also warranted because actions to disqualify counsel are often "used tactically as leverage in litigation." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 2010 WL 638369, at *5 (S.D.N.Y. Feb. 1, 2010), *citing Evans,* 715 F.2d at 791-792. *See also Leslie Dick Worldwide, Ltd. v. Soros*, 2009 WL 2190207, at *6 (S.D.N.Y. July 22, 2009); *Commercial Union Ins. Co. v. Marco Int'l Corp.*, 75 F.Supp.2d 108, 110 (S.D.N.Y. 1999).

Munich Re believes that Plaintiff's behavior here is an exceptional example of actions to disqualify being used as tactical leverage in litigation. Munich Re has recently learned that Plaintiff is using this tactic to stall at least one other arbitration concerning the same underlying claim. *See* Monahan Aff. Ex. 13. Plaintiff has initiated another disqualification action against another claimant (Allianz) in the District of Columbia. *Id.* The underlying facts in the two arbitrations are the same – a claim by Allianz arising from payments made to settle clergy sexual abuse claims made against the Roman Catholic Archdiocese of Los Angeles ("ADLA"). *Compare* Young Aff. Ex. C ¶ 17 *to* Monahan Aff. Ex. 13 ¶ 9. Plaintiff was both a direct reinsurer and an indirect (via Munich Re) reinsurer of Allianz on the same underlying loss, and Plaintiff has not paid either claim. When each of these entities (Allianz and Munich Re) sued Plaintiff for non-payment, Plaintiff sued both entities to disqualify their counsel of choice. Plaintiff may be the victim of a remarkable coincidence, but more likely Munich Re's and Allianz' Plaintiff is using these disqualification actions to delay collection efforts. It is particularly important in the present circumstances that Plaintiff's efforts to block legitimate

collection actions with baseless and frivolous proceedings not be permitted – that Plaintiff be forced to support its allegations with actual documents and discovery.

Further, Plaintiff's reliance on the New York Code of Professional Responsibility is misplaced. This Court derives its authority to consider Plaintiff's action to disqualify from its inherent power to preserve the integrity of the adversarial process and <u>not</u> from New York Code of Professional Conduct. *See Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). The Rules of the New York Code of Professional Responsibility "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." *Id.* Therefore, <u>Plaintiff must show more than a technical violation to establish grounds for disqualification of RFF.</u>[23] *See also Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 2006 WL 2013471, at *3 (E.D.N.Y. 2006); *Etna Products Co., Inc. v. Tactica Int'l, Inc.*, 234 F.Supp.2d 442, 445 (S.D.N.Y. 2002) ("[P]rofessional disciplinary bodies are available to police the behavior of counsel. Accordingly, the Second Circuit has made clear that disqualification is appropriate only if a violation of the Code of Professional Responsibility gives rise to a significant risk of trial taint. That is to say, disqualification for an alleged conflict of interest is appropriate only if ... the attorney is in a position to use privileged information acquired in the representation of a former client against that client in another matter." (Internal citations omitted)).

Against this backdrop of the Second Circuit's expressed displeasure at receiving, and greater reluctance to grant, disqualification motions, Plaintiff is taking the remarkable position

---

[23] RFF denies there are grounds to establish even a technical violation of Rule 1.9.

that it does not have to produce any documents to prove its allegations.  Rather, Munich Re and

the Court must simply accept everything Plaintiff says as true.  Plaintiff is essentially arguing that

the *potential* for a violation of Rule 1.9 inherent in the present situation, supported by a privilege

log, is sufficient for this Court to *infer* that Plaintiff's allegations are true.  Plaintiff's position is

fundamentally wrong and unfair on many levels, and is contrary to the case law concerning

disqualification.


**I.    PLAINTIFF IS NOT ENTITLED TO ANY PRESUMPTION OF CONFIDENTIAL COMMUNICATIONS BECAUSE PLAINTIFF HAS NOT ALLEGED OR PROVEN A SUBSTANTIAL RELATIONSHIP.**

**A.    Plaintiff Must FIRST Demonstrate a Substantial Relationship Exists Between the Present and Prior Arbitrations; Only Then Will a Rebuttable Presumption of Confidential Communications Be Triggered.**

The Second Circuit has set forth a 3-prong test which New York courts use to determine

whether disqualification is appropriate.  The test provides that disqualification is warranted if the

movant can establish that:

i)     the moving party is a former client of the adverse party's counsel;

ii)    there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

iii)   the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant, privileged information in the course of his prior representation of the client.

*Leslie*, 2009 WL 2190207 at *7, *citing Evans*, 715 F.2d at 791.[24]

To satisfy the "substantial relationship" element of the 3-prong test, the party seeking disqualification must show that "the relationship between the issues in the prior and present cases is 'patently clear' and that the issues are 'identical' or 'essentially the same.'" *See Leslie*, 2009 WL 2190207 at *9, *citing Government of India*, 569 F.2d 737, 739-740 (2d Cir. 1973). *See also New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*, 186 F.R.D. 317, 320 (S.D.N.Y. 1999) ("NYMGIC"). Specifically, "[i]t is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." *Revise*, 2010 WL 638369 at *10. *See also Hickman v. Burlington Bio-Medical Corp.*, 371 F.Supp.2d 225, 230 (E.D.N.Y. 2005) ("Where, as here, the prior representation is limited to litigation, the issue is whether the material facts in the prior litigation are the same as those involved in the present representation.")

Very few circumstances satisfy the "substantial relationship" test. For instance, two matters that concern apparel that may be subject to trademark protection are not substantially related where the trademarks at issue are different. *See Revise*, 2010 WL 638369 at *11. Multiple prior representations on various patent matters are not substantially related to a pending matter, because all concerned different products and there was "no showing that there is any connection between the design patent and products here in suit and the patents, products and other matters" involved in the prior representations. *Etna*, 234 F.Supp.2d at 445. Two cases arising under the

---

[24] We note that Plaintiff relies on cases which pre-date *Evans*, 715 F.2d 788 (2d Cir. 1983). Recent Second Circuit and Southern District cases generally rely on *Evans* as setting forth the disqualification standard. *See Hempstead*, 409 F.3d at 133; *Leslie*, 2009 WL 2190207 at *7; *Koch Industries, Inc. v. Hoechst Aktiengesellschaft*, 650 F.Supp.2d 282, 286 (S.D.N.Y. 2009); *Vestron, Inc. v. National Geographic Society*, 750 F.Supp. 586, 594 (S.D.N.Y. 1990).

same insurance policy, but concerning different losses, are not substantially related. *See Commercial Union*, 75 F.Supp.2d at 112. *See also Koch*, 650 F.Supp.2d at 286-287 ("Simply conducting an antitrust audit cannot itself be sufficient to disqualify a law firm from all future adverse representations that raise antitrust issues."); *NYMGIC*, 186 F.R.D. at 320.

Only if the moving party can establish a "substantial relationship" between the former and present matters, will a rebuttable presumption arise that relevant privileged information was disclosed to counsel, thereby satisfying the third element of the test and justifying disqualification. *See Leslie*, 2009 WL 2190207 at *12. The "substantial relationship" inquiry and rebuttable presumption that follows are designed as a substitute for proof and to "forestall a direct inquiry into whether confidential information was in fact transmitted by the client." *Revise*, 2010 WL 638369, at *13, *citing United States Football League v. National Football League*, 605 F.Supp. 1448, 1461 (S.D.N.Y. 1985).

If the movant *cannot* establish a substantial relationship, no presumption exists and the Court is not restricted from requiring proof that confidential information was disclosed. "The failure to prove a substantial relationship between the earlier and present litigation destroys any presumption of relevant shared confidence." *Hickman*, 371 F.Supp.2d at 231.

There is no factual similarity between the prior and pending arbitrations. Plaintiff has not even attempted to identify similarities – because there are none.

> **B.**     **Plaintiff Has Not Alleged Any Facts Which Tend to Show a Substantial Relationship Between the Prior and Pending Arbitrations.**

In the hope of avoiding the issue, Plaintiff asserts in a footnote that the question of substantially related "is not presently before the Court." Pl.'s Mot. For Protective Order, p. 12, n. 20. Plaintiff is incorrect. The Second Circuit has expressly held that showing a substantial relationship is a pre-requisite to shielding 'confidential information' and Plaintiff seeks in this motion to shield its purported 'confidential information.' Therefore, it clearly is intrinsic to determining whether Plaintiff is entitled to the relief sought in the present motion.

Plaintiff further takes the position that it does not need to disclose confidential information in order to prove a substantial relationship. *Id.* at pp. 12-13. This odd statement appears to arise from a misunderstanding of the law. In fact, the Second Circuit's test does not address what information Plaintiff may or should use to demonstrate a substantial relationship, only that it must meet that burden of proof in order to trigger the decreased scrutiny of its confidential information. Plaintiff may use the purported "confidential information" or some other information it has, as yet, not disclosed, so long as Plaintiff either:

a)   Produces documents and evidence of a substantial relationship; or

b)   Produces documents and specific evidence concerning the confidential information it alleges RFF previously obtained that is relevant to the pending arbitration.

The limited allegations Plaintiff has made do not indicate that there is a substantial relationship between the prior and present arbitrations. In fact, in its Responses to Munich Re's Interrogatories, Plaintiff espouses a "view" of substantial relationship which is contrary to the case law cited above. Specifically, Plaintiff asserts that "substantial relationship" is determined by:

> Whether the lawyer or law firm subject to being disqualified acquired or
> had the opportunity to acquire former client's "Confidential Information"
> that would be useful to the lawyer/law firm in its representation of its
> current client in a matter adverse to its former client.  Young Aff. Ex. E at
> 13-14.

This view is completely different from the test for substantial relationship used by this Court.  To satisfy the "substantial relationship" element of the 3-prong test, this Court and the Second Circuit require the party seeking disqualification to show that "the relationship between the issues in the prior and present cases is 'patently clear' and that the issues are 'identical' or 'essentially the same.'" *See Leslie*, 2009 WL 2190207 at *9, *citing Government of India*, 569 F.2d at 739-740. There is nothing in this standard regarding *opportunity to acquire* information.  The point of the substantial relationship element is to establish the *relevance* of information disclosed before the Court will impose a prejudicial presumption that the third element is satisfied.

Since Plaintiff espouses an incorrect "view" of substantial relationship, the limited 'facts' that Plaintiff alleges to demonstrate a substantial relationship are completely insufficient. Specifically, Plaintiff alleges in its Response to Interrogatory 3 that "[T]he Underlying Arbitration is, and the *Wausau v Paladin* and *Paladin v Wausau Arbitrations* were, reinsurance arbitrations. Consequently, the Underlying Arbitration involves, or has the potential to involve, all of the issues and corresponding "Confidential Information" identified in Wausau's Response to Munich Re's Interrogatory No. 1.  These facts mean that the Underlying Arbitration and the two *Paladin Arbitrations* have a 'substantial relationship' as that term is used in Rule 1.9(a) of New York's Rules of Professional Conduct and the case law interpreting same."[25]

---

[25] Young Aff. Ex. E at 13-14.

Likewise, Plaintiff's repeated assertion elsewhere in its Responses to Interrogatories that all reinsurance arbitrations concern identical issues is ridiculous on its face and woefully insufficient to satisfy the 'substantial relationship' test. *See* Young Aff. Ex. E at 11 ("RFF acquired 'confidential information' ... concerning the procedural aspects of the arbitration ... as they are present in all reinsurance arbitrations ..."), p. 12 ("concerning substantive reinsurance issues ... as they are present in all reinsurance arbitrations ...") and pp. 12-13 (internal ceded and assumed reinsurance operating procedures and substantive views on general liability, ceded reinsurance and assumed reinsurance claim coverage issues ... as said issues are present in all reinsurance arbitrations.").

There is ample precedent holding precisely the <u>opposite</u> of Plaintiff's assertion – that two matters are **not** substantially related simply because they concern the same general area of law – trademark, employment discrimination, reinsurance. *See Revise*, 2010 WL638369, at *11; *Etna*, 234 F.Supp.2d at 445.

Plaintiff's alleged categories of 'confidential information' (listed on pages 6-7, *supra*) are similarly lacking and contrary to applicable law. These categories of information are basically a listing of the stages in an arbitration proceeding (arbitrator and umpire selection, discovery) and the general issues that could -- but not necessarily -- be encountered in a reinsurance arbitration (confidentiality, access to records, follow-the-fortunes). These are all procedures and issues that are so basic and mechanical that it is difficult to imagine that Plaintiff would need to disclose any 'confidential information' to RFF or to discuss strategy with RFF (who is experienced reinsurance arbitration counsel), so that RFF could act appropriately on Plaintiff's behalf. Munich Re is

doubtful that any such 'confidential information' was discussed, and requests that this Court put Plaintiff to its proof.

Moreover, all of these categories involve typically 'general litigation thinking,' which is **not** grounds for disqualification. *See Revise*, 2010 WL 638369, at *11 ("Where the only allegation of similarity is the attorney's alleged insight into the former client's general litigation thinking, similarity is not established."); *Hickman*, 371 F.Supp.2d at 230; *Wieme v. Eastman Kodak Co.*, 2004 WL 2271402, at *6 (W.D.N.Y. Sept. 7, 2004). As this Court observed during the parties' Initial Pre-Trial Conference on June 28, 2010, general litigation thinking is imbedded in nearly every legal representation. If Plaintiff's position was correct, no firm could ever represent a client in any matter adverse to a former client. This is not the law. *See Vestron*, 750 F.Supp. at 595 ("[I]f insight into a former client's general 'litigation thinking' were to constitute 'relevant privileged information,' then disqualification would be mandated in virtually every instance of successive representation. That is clearly not the law...").

## II.   PLAINTIFF MUST DEMONSTRATE GOOD CAUSE FOR THE RELIEF SOUGHT.

The party seeking a Rule 26(c) protective order has the burden of establishing that "good cause" for the protective order exists. *See Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010). Good cause is a "particular need for protection" in order to prevent a "clearly defined, specific and serious injury." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *In Re Terrorist Attacks*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy

the Rule 26(c) test.  Moreover, the harm must be significant, not a mere trifle." *Duling*, 266

F.R.D. at 71.

      To be clear: **Plaintiff has produced no documents whatsoever regarding any topic**.

Plaintiff is asking this Court to ratify its refusal to produce any documents.  Even assuming

(without conceding) Plaintiff can justify protection of a few specific privileged documents,

Plaintiff cannot possibly justify this refusal to produce **any** documents.  It is simply not reasonable

to maintain that every document in Plaintiff's possession that relates to this action is privileged or

is 'confidential information.'  The fact that Plaintiff is taking this unreasonable position is simply

more evidence of the lack of merit in this action.

      Plaintiff has failed to demonstrate the requisite 'good cause' and its Motion for Protective

Order should be denied. Specifically:

    a)     Plaintiff has not established that applicable law relieves it of its document

          production obligation; and

    b)     Plaintiff has not established that less restrictive measures will not provide

          sufficient protection.

    **A.**     **Plaintiff Has Not Established That Applicable Law Relieves It
of Its Document Production Obligation.**

      Plaintiff claims that it has shown 'good cause' for relief by citing various cases concerning

the nature and depth of the Court's inquiry into the nature of allegedly confidential information

and the movant's burden of proof.  *See Government of India*, 569 F.2d at 739-740; *Emle Indus.,*

*Inc. v. Patentex, Inc.*, 478 F.2d 562 (2d Cir. 1973); *T.C. Theatre Corp. v Warner Bros. Pictures,*

113 F.Supp. 265 (S.D.N.Y. 1953); *Jamaica Public Service Co. Ltd. v. AIU Ins. Co.*, 92 N.Y.2d

631, 637-638 (1998).  For instance, the Court in *T.C. Theatre*, which Plaintiff cites at length,

states:

> **The Court** will assume that during the course of the former
> representation confidences were disclosed to the attorney bearing on the
> subject matter of the representation. **It [the Court]** will not inquire into
> their nature and extent. ... **For the Court to probe further** and sift the
> confidences in fact revealed would require the disclosure of the very
> matters intended to be protected by the rule.  113 F.Supp. at 268-269.

None of these cases are on point.  Not one of them addresses the appropriate scope of

discovery to be allowed to the party opposing disqualification.  There is no mention in *T.C.*

*Theatre*, or any of the others cited by Plaintiff, that the party seeking disqualification is entitled to

blanket relief from producing documents to the party opposing disqualification.

If these cases related to the scope of discovery, and not the movant's burden of proof to the

Court, several issues would naturally need to be addressed by the Court in each of these opinions

before completely undermining the non-moving party's ability to challenge the movant's position.

However, there is no discussion in any of these cases concerning the severity of such a restriction

on the non-movant's right to discovery, nor or of any countervailing concessions that must be

made to the non-movant because the right to broad discovery on all relevant topics has been

fundamentally compromised, nor of the precautions that must be taken by the Court to prevent

abuse of this advantage by the movant.  These cases have nothing to do with Plaintiff's obligation

to participate meaningfully in the discovery process, and they provide no support for Plaintiff's

outrageous request.

**B.      Plaintiff Has Not Demonstrated That Less Restrictive Measures Are Insufficient.**

If the Court determines a protective order is appropriate, it must balance "the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought." *Mitchell v. Fishbein,* 227 F.R.D. 239, 245 (S.D.N.Y. 2005). "The Court should consider other factors that may militate against issuing a protective order ... whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public." *Koster v. Chase Manhattan Bank,* 93 F.R.D. 471, 479 (S.D.N.Y. 1982). *See also In re Initial Public Offering Securities Litigation,* 220 F.R.D. 30, 36 (S.D.N.Y 2003) (Identifying several factors that the Court should consider, including "how central (or tangential) the evidence sought is in relation to the central issues in the litigation," and "whether discovery of the evidence can be conditioned on terms that would alleviate the hardship in producing it."). Further, the extent of the restrictions on discovery should be limited to what is necessary to provide the protection needed. *Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 601 (2d Cir. 1986).

Munich Re has offered on multiple occasions to negotiate and enter into a confidentiality agreement which could include various restrictions on discovery, including the option to designate documents "attorneys eyes only." Plaintiff has ignored Munich Re's offers – including failing to mention in its Motion for Protective Order that Munich Re has made such offers.

From Munich Re's perspective, the only legitimate concern presented by discovery of Plaintiff's documents is that a portion (not all) of its document production should not be disclosed to Munich Re. The documents associated with the *Paladin v Wausau* arbitration are likely subject

to a confidentiality agreement entered into between Paladin and Plaintiff, which Plaintiff (and RFF) should honor, barring the Court's instruction otherwise.[26]  In addition, some of the communications between Plaintiff and RFF might arguably be privileged.

However, there is no reason to withhold any of these documents from RFF, since it was counsel for Plaintiff in that arbitration and would have received or created all but a few of the documents Plaintiff would produce.  Likewise, there is no reason to restrict the use of these documents at the depositions of employees of RFF or Plaintiff.  Therefore, Munich Re's offer of an "attorneys eyes only" confidentiality agreement would be sufficient to provide the protection to which Plaintiff is entitled.

Plaintiff should not be provided the most drastic protection available for the entirety of its documents – non-production – without being required to attempt to negotiate another alternative that is less prejudicial to Munich Re, or at least to explain why such less drastic alternatives will not provide the necessary protection.


## **CONCLUSION**

For the reasons set forth above, Plaintiff has failed to demonstrate that it is entitled to the drastic and unreasonable relief requested in its Motion for Protective Order.

---

[26] We note, however, that in the Southern District, the existence of a confidentiality agreements in arbitrations is not, on its own, a sufficient basis to justify sealing court documents. *See Sony Ericsson Mobile Communications AB v. Delta Electronics Public Co. Ltd. (Thailand)*, 2009 WL 959639, at *2 (S.D.N.Y. April 8, 2009), *citing Global Reinsurance Corp. – U.S. Branch v. Argonaut Ins. Co.*, 2008 WL 1805459 (S.D.N.Y. April 24, 2008).

WHEREFORE, Munich Re respectfully requests that Plaintiff's Motion for Protective Order be denied in its entirety.  In the alternative, Munich Re requests that this Court Order Plaintiff to engage in a good faith negotiation of a confidentiality agreement/order under the terms of which Plaintiff will be required to produce documents to Munich Re, but may identify specific documents as confidential, and those documents will not be shared with Munich Re.

Dated: New York, New York
       September 3, 2010

                                    Respectfully submitted,
                                    RUBIN, FIORELLA & FRIEDMAN LLP

                                    By:
                                        Bruce M. Friedman, Esq.
                                        Crystal Monahan, Esq.
                                        292 Madison Avenue, 11th Floor
                                        New York, New York 10017
                                        Phone: 212-447-4644
                                        Fax: 212-953-2462