Bruce M. Friedman (BF9074)
Crystal Monahan (CM1415)
RUBIN, FIORELLA & FRIEDMAN LLP
292 Madison Avenue, 11th Floor
New York, New York 10017
Phone: 212-447-4644
Fax: 212-953-2462
Attorneys for Munich Reinsurance America, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

Plaintiff,

-v-

MUNICH REINSURANCE AMERICA, INC.,

Defendant.

Docket No.: 10-CV-3558 (PKC)

**MUNICH REINSURANCE AMERICA, INC.'S RULE 56.1 STATEMENT OF MATERIAL FACTS**

Defendant, MUNICH REINSURANCE AMERICA, INC. ("Munich Re"), respectfully submits this Statement of Material Facts in support of its Motion for Summary Judgment, pursuant to Local Civil Rule 56.1.

## I. ARBITRATION BETWEEN MUNICH RE AND WAUSAU:

1. From July 1, 1997, to July 1, 1982, Employers Insurance Company of Wausau (hereinafter Plaintiff or "Wausau"), provided reinsurance to Munich Re pursuant to an excess of loss reinsurance treaty[1], titled "Excess of Loss Reinsurance Contract," which applied to facultative business written by Munich Re in its "Casualty Facultative Department." **Exhibit A,** pp. MRA 171-

[1] Reinsurance contracts providing coverage for multiple underlying risks are referred to as "treaties." *See Travelers Casualty and Surety Co. v. Certain Underwriters at Lloyd's of London,* 96 N.Y.2d 583, 588 (N.Y. 2001).

172.[2]

2.   From July 1, 1982, to July 1, 1985, Wausau provided reinsurance to Munich Re pursuant to an excess of loss reinsurance treaty, titled "First Casualty Facultative Excess of Loss Reinsurance Contract," which applied to facultative business written by Munich Re in its "Casualty Facultative Department." **Exhibit B**, pp. MRA 201-202.[3]

3.   The treaties have the same attachment point and limits of liability – $2,500,000, excess of $1,000,000. *See* **Exhibit A**, p. 158; **Exhibit B**, p. MRA 205.

4.   The treaties have similar definitions of "ultimate net loss." *See* **Exhibit A**, pp. MRA 173-174, 149-150, **Exhibit B**, p. MRA 203-204.

5.   The treaties have identical Arbitration provisions. *See* **Exhibit A**, pp. MRA 184-185, **Exhibit B**, p. MRA 212-213.

6.   The Arbitration provisions provide, in part, as follows:

> (b) The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies. Each party shall appoint its arbitrator and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint its arbitrator within four weeks after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four weeks after their nominations, each of them shall name three, of whom the other shall decline two and the decision shall be made by drawing lots. *Id.*

7.   On October 28, 2008, Munich Re advised its reinsurers, and issued billings, for a loss arising under the Treaties concerning original insured Roman Catholic Archdiocese of Los Angeles

---

[2] Exhibits referenced herein are attached to the Affidavit of Crystal Monahan, Esq., in Support of Munich Re's Motion for Summary Judgment, filed herewith.

[3] Munich Re refers to the treaties collectively as the "Treaties."

("ADLA") and ceded to Munich Re by Allianz. *See* **Exhibit C, D.**

8. The claim notices included a report providing details regarding the underlying claims. The report provides in part as follows:

> The suits were amassed until 12-31-03 during a statute of limitations "window" made possible by a Calif statute 340.1. 340.1 was passed in 2002. It suspended the statute of limitations for one year and allowed an institution such as the archdiocese to be sued if it knew of or was on notice of unlawful sexual conduct yet allowed the molester to continue to work with children.
>
> . . .
>
> Of the 568 suits, there are 170 that involve allegations within Allianz coverage periods. . . .
>
> Allianz recently settled all of its ADLA's past, present and future sexual molestation litigation for $62M.
>
> . . .
>
> The CA courts have not yet ruled on [the] issue [of number of occurrences]. The criteria to determine the number and dates of occurrence for coverage purposes has not yet been established. The coverage is triggered by allegations of negligent supervision that result in bodily injury. While coverage is excluded for the intentional acts of the molesters, the resulting injuries are directly linked to the specific dates of the alleged molestation resulting from negligent hiring/supervision of the perp.
>
> . . .
>
> The suits present facts of a nature that a juror are likely to have heard before through media coverage and that are likely to cause a volatile reaction, both factors adding credibility to plaintiff claims that memory and awareness of the occurrences were repressed until recently but that their injuries are very real.
>
> . . .
>
> The entire ADLA sexual molestation was settled. The overall settlement involved $660 million in total.
>
> Allianz, the other insurers, and the ADLA reached the $660 million settlement with all the 508 remaining plaintiffs to resolve all sexual abuse claims filed as well as all future claims filed against the ADLA.
>
> The settlement represented approximately $1,300,000 per claimant. The ADLA agreed to contribute approximately $220 million toward that settlement and guaranteed the plaintiffs would be able to recover an additional $123 million against the remaining defendants.
>
> As part of the global settlement, Allianz contributed $62 million which payment was made in November of 2007.
>
> Allianz ceded its settlement on a one occurrence basis, based on the overall

negligent supervision. **Exhibit D**, pp. 001059-001062.

9. The report further indicates that Munich Re "settled [the] claim for $17,500,000 (approx 20% discount)." *Id.* at 001063.

10. Wausau acknowledged receipt of the notice and billings on November 25, 2008, and requested additional information. *See* **Exhibit E.**

11. Munich Re provided additional information on December 8, 2008. *See* **Exhibit F.**

12. On December 17, 2008, Wausau acknowledged receipt of Munich Re's December 8, 2008, letter and requested additional information. *See* **Exhibit G.**

13. Among the documents provided to Wausau were copies of reports from counsel Munich Re had retained to monitor and analyze the Allianz claims. *See* **Exhibit H**.

14. In May 2009, Wausau conducted an audit of Munich Re's files pertaining to the Allianz/ADLA loss. *See* **Exhibit I**, **Exhibit J**, p. 000041. In addition, the Munich Re claim adjuster, Greg Armour, met with a representative of Wausau and discussed the Allianz/ADLA loss. *See* **Exhibit J**, p. 000041.

15. After conducting the audit, Wausau raised one concern with Munich Re's claim arising from the Allianz/ADLA loss:

> We are having difficulty reconciling [Munich Re's] rejection of the single occurrence approach and its payment of an amount less than the amount billed on a single occurrence basis with [Munich Re's] single occurrence presentation to Wausau. Stated as a question, what justifies [Munich Re's] presentation to Wausau on a single occurrence basis when there appears to be no dispute that [Munich Re] and Allianz resolved their disagreement on other than a single occurrence basis? **Exhibit I**, p. 000064.

16. On August 24, 2009, Munich Re responded to Wausau's query as follows:

> Wausau's implicit assertion that [Munich Re] did not settle this claim on a

> single occurrence basis with Allianz is completely unfounded and without merit. [Munich Re's] utilization of speculative alternate allocation approaches had absolutely nothing whatsoever to do with Allianz' settlement of the underlying claim. Likewise, [Munich Re's] alternate allocations were not based specifically on facts presented by the underlying claims; consequently, [Munich Re] decided to follow Allianz' single occurrence settlement on a discounted basis. [Munich Re] was able to utilize a multiple occurrence position, that it felt would have been possible with additional discovery, to mitigate the reinsurance claims presentation by Allianz. Ultimately, however, [Munich Re] felt that its chance of prevailing in litigation on this issue was not good. [Munich Re's] decision not to litigate this matter was based on several factors including: the lack of any specific factual details concerning each sexual molestation claim, the very general mass settlement of all ADLA claims together whereby specific plaintiff settlement amounts were never disclosed, the underlying ADLA settlement created a policy buy-back for future sexual molestation claims, and Allianz settled the claim on a single occurrence basis.
>
> Furthermore, [Munich Re] believed that contesting the reasonableness of Allianz' settlement on a single occurrence basis would have likely resulted in a follow the fortunes ruling for Allianz. **Exhibit J**, pp. 000042.

17. On September 9, 2009, Munich Re sent Wausau a letter demanding payment of billings not later than September 28, 2009. *See* **Exhibit K.**

18. On November 20, 2009, Wausau responded to Munich Re's letter of August 24, 2009, stating that it "remains unpersuaded that it has an obligation to indemnify [Munich Re] for the [ADLA] loss presentations and will not be making payment as requested." **Exhibit L**, p. MRA 0077. Wausau goes on to explain the basis for its non-payment is that "[Munich Re] neither accepted nor settled the loss from Allianz as a single occurrence. Wausau therefore cannot accept [Munich Re's] subsequent presentation of this loss as a single occurrence." *Id.*

19. On February 18, 2010, Munich Re participated in a conference call with Wausau to, once again, address any concerns that Wausau might have. Wausau did not raise any new issues during that conference call, but continued to refuse to reimburse Munich Re for the loss. *See*

**Exhibit M**.

20. Munich Re served a demand for arbitration against Wausau on April 8, 2010. *See* **Exhibit N.**

21. Wausau responded to Munich Re's arbitration demand on April 27, 2010, objecting to a consolidated arbitration and objecting to RFF's representation of Munich Re. *See* **Exhibit O**.

22. On May 7, 2010, Wausau named two party arbitrators, Spiro Bantis with respect to the 1977-1982 treaty losses, and John Cole with respect to the 1982-1985 treaty losses. *See* **Exhibit P.**

23. On May 13, 2010, Munich Re appointed its party arbitrator, Andrew Maneval. *See* **Exhibit Q.** Neither the arbitration appointed by Munich Re - - Andrew Maneval - - nor the umpire candidates nominated by him - - Jonathan Rosen, Laurence Monin and Paul Thomson - - were the subject of discussion between Wausau and RFF in the Paladin arbitration. *See* Friedman Aff. ¶16, 17 and Exhibits "7" and "8" thereto.

## II. ARBITRATION BETWEEN PALADIN AND WAUSAU:

24. Paladin Reinsurance Corporation ("Paladin") reinsured Wausau under a number of facultative certificates, including the following:

a. C1410, with respect to insured American Bureau of Shipping (*see* **Exhibit R**, pp. RFF 0207-0209);

b. C1347, with respect to insured Coopers & Lybrand (*see* **Exhibit R**, pp. RFF 0220-0221);

c. C1161, with respect to insured Coopers & Lybrand (*see* **Exhibit R**, pp. RFF

0225-0227);

d.     C1346, with respect to insured Coopers & Lybrand (*see* **Exhibit R**, pp. RFF 0234-0235);

e.     C1265, with respect to insured Frank B. Hall & Co. (*see* **Exhibit R**, pp. RFF 0249-0250);

f.     C1260, with respect to insured Semta (*see* **Exhibit R**, pp. RFF 0288-0289, 0292-0294);

g.     C1321, with respect to insured Ingersoll Rand Company (*see* **Exhibit R**, pp. RFF 0930);

h.     C1143, with respect to insured A. Epstein & Sons International, Inc. (*see* **Exhibit R**, pp. RFF 0937-0941);

i.     C1390, with respect to insured The Prudential Insurance Company of America (*see* **Exhibit R**, pp. RFF 2942-2943);

j.     C1217, with respect to insured Internorth, Inc. (*see* **Exhibit R**, pp. RFF 2944-2945);

k.     C1174, with respect to insured Ivaco Inc./Atlantic Building Systems Inc. (*see* **Exhibit R**, pp. RFF 2951-2953);

l.     C1070, with respect to insured Wigham Poland Holdings Ltd. (*see* **Exhibit R**, pp. RFF 2954-2957);

m.     C1156, with respect to insured Gulf Oil Corp. (*see* **Exhibit R**, pp. RFF 4131-4132);

n.     C1343, with respect to insured Gulf Oil Corp. (*see* **Exhibit R**, pp. RFF 4133-

4134);

o. C1110, with respect to insured Kentucky Agricultural Energy Corp. (*see* **Exhibit R**, pp. RFF 4135-4140);

p. C1333, with respect to insured Congoleum Corp. (*see* **Exhibit R**, pp. RFF 5604-5605).

25. Each of these facultative certificates contains a provision which states in part, "The Company [Wausau] warrants to retain for its own account the Company Retention specified in the Declarations of this Certificate." *Id.* at RFF 0208, 0221, 0227. The treaties between Munich Re and Wausau do not warranty of retention provisions. *See* **Exhibits A and B**.

26. On November 28, 2006, Paladin Reinsurance Company ("Paladin") demanded arbitration against Wausau, seeking to "collect repayment from Wausau of amounts previously paid by Paladin" under the facultative certificates identified in Paragraph 34, above. **Exhibit S**. Paladin raised only one issue in its arbitration demand: "At the time Paladin made these payments, Paladin was unaware that Wausau was in breach of the warranties of retention set forth in each of the certificates and had no reason to believe that that was the case. As a result of the breaches of warranty, Paladin was not obligated to make such payments and is entitled to recover these funds in full with interest." *Id.*

27. Wausau appointed its party arbitrator, Robert Robinson, on January 25, 2007. *See* **Exhibit T.**

29. On May 21, 2007, Wausau and Paladin each served a Position Statement. *See* **Exhibit U.**

30. Wausau's Position Statement identifies two issues in dispute: i) whether Paladin

could seek return of reinsurance payments after such a long delay; and ii) and whether Paladin knew and cared if Wausau reinsured its retention under the facultative certificates, Wausau's position being that Paladin did know and did not care. *See* **Exhibit U**, pp. RFF 2914-2917.

31. After some discovery, Wausau moved for and was granted, summary judgment on the grounds that the statute of limitations had expired. *See* **Exhibit V.**

32. The Revised Final Award provides:

> 2. It is undisputed that New York law applies to the contracts at issue and that the governing statute of limitations is the latter of six years from the date of the alleged breach or two years from the date Paladin knew of, or through the exercise of reasonable diligence could have discovered the alleged breach.
>
> 3. The Panel finds that Paladin knew of, or with the exercise of reasonable diligence could have discovered, Wausau's alleged breach of the retention warranties in the facultative certificates at issue more than two years prior to October 20, 2001. Accordingly the Panel finds that Paladin's claims in this proceeding are time barred. *Id.*

33. The Revised Final Award was confirmed in the United States District Court for the Southern District Court on February 21, 2008, in an action styled *Employers Insurance Company of Wausau v Paladin Reinsurance Corporation*, 2008 civ. 0042 (JFK). *See* **Exhibit W**.

## III. ARBITRATION BETWEEN WAUSAU AND PALADIN:

34. By letter dated October 26, 2001, Wausau initiated an arbitration against Paladin for refusal to pay billings from Wausau arising from several facultative certificates. *See* **Exhibit X.**

35. None of the facultative certificates under which Wausau sought payment from Paladin in 2001 were also at issue in the arbitration that Paladin brought against Wausau in 2006. *See* **Exhibits S** and **X**.

36. The law firm Martin, Clearwater and Bell LLP was counsel for Wausau in the *Wausau v Paladin* arbitration. *See* **Exhibit Y.**

37. A hearing was conducted in the *Wausau v Paladin* arbitration on January 16, 2007, a Final Award issued on January 23, 2007, and a Clarification to the Final Award issued on February 5, 2007. *See* **Exhibit Y.**

38. Follow the fortunes is a reinsurance doctrine. *See North River Insurance Co. v. ACE American Reinsurance Co.,* 361 F.3d 134, 139-140 (2d Cir. 2004).

39. Follow the fortunes, in the claim context, is also referred to as "follow the settlements." *Id.*

40. Although Wausau has framed its issue in the Munich Re arbitration as a number of occurrences issue, the doctrine of follow the settlements requires Wausau, as the reinsurer, or more accurately here, the retrocessionaire, to abide by Munich Re's settlement with Allianz so long as the settlement was reasonable, entered into in a businesslike manner, and made in good faith. *Id. See also American Bankers Ins. Co. of Florida v. Northwester Nat'l Ins. Co.,* 198 F.3d 1322, 1335-1337 (11th Cir. 1999).

41. The treaties each contain a follow the fortunes provision stating that Wausau's liability "shall follow that of [Munich Re]." *See* Exhibit 48 to Kareken Dec., Article X and Exhibit 49 to Kareken Dec., Article 11.

42. The issue of whether the doctrine of follow the settlements applies depends upon the particulars of how the specific claim was adjusted and settled.

Dated: New York, New York
November 12, 2010

Respectfully submitted,
RUBIN, FIORELLA & FRIEDMAN LLP

By: ______________________

Bruce M. Friedman, Esq.
Crystal Monahan, Esq.
292 Madison Avenue, 11th Floor
New York, New York 10017
Phone: 212-447-4644
Fax: 212-953-2462