USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-16-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EMPLOYERS INSURANCE COMPANY OF
WAUSAU,

                         Plaintiff,                       10 Civ. 3558 (PKC)

               -against-                    MEMORANDUM
                                                  AND
MUNICH REINSURANCE AMERICA, INC,            ORDER

                       Defendant.

-----------------------------------------------------------x

CASTEL, District Judge:

        Plaintiff Employers Insurance Company of Wausau ("Wausau") is a party to certain reinsurance agreements with defendant Munich Reinsurance America Inc. ("Munich Re"). Munich Re has demanded arbitration of certain claims against Wausau. Wausau brings this action, invoking this Court's diversity jurisdiction, asserting that Munich Re's counsel should be disqualified because it previously acted as Wausau's counsel in a substantially related matter. Munich Re's counsel, the law firm of Rubin, Fiorella & Freidman LLP ("RFF"), admits that it previously represented Wausau in a matter that concluded in 2008 but vehemently maintains that the two matters are neither the same nor substantially similar within the meaning of the Rules of Professional Responsibility and the case law governing attorney disqualification. For the reasons outlined below, this Court concludes that the two matters are neither the same nor substantially similar and no disqualification will be ordered.

Subject Matter Jurisdiction and Arbitrability of the Disqualification Issue

The complaint in this action seeks as its principal relief a judgment declaring "that it is not permissible for Rubin, Fiorella & Friedman to represent Munich against Wausau in the reinsurance arbitration demanded by Munich because said representation constitutes a violation of Rule 1.9 of New York's Rules of Professional Responsibility." (Compl. ¶ 30.)  It invokes this Court's diversity jurisdiction alleging that plaintiff is organized under the laws of and has its principal place of business in Wisconsin and defendant is organized under the laws of Delaware with its principal place of business in New Jersey; plaintiff further alleges that the amount in controversy exceeds the Court's jurisdictional threshold. 28 U.S. C. § 1332(a).

The amount in controversy in the underlying arbitration is between $520,000 and $650,000.  But this action neither seeks to adjudicate the claim nor compel arbitration thereof.  Assuming the truth of Wausau's assertions and the legal conclusions it draws, its confidential information could be used against it in the arbitration which would create a risk that it could be held liable to Munich Re for damages in a circumstance where it might not be liable if Munich Re were not represented by a conflicted attorney; this is not a merits assessment by the Court but a review of the nature of the claim. Because the object of the action is protection against a liability which exceeds $75,000, exclusive of interests and costs and the other requirements for diversity jurisdiction are satisfied, this Court concludes that there is subject matter jurisdiction.

Scant authority has been found and none has been submitted by the parties on the issue of whether the disqualification of an attorney from an arbitration is a matter

left to the arbitrators or to the Court.  ". . . The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the "*question of arbitrability*," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (emphasis in the original) (quoting AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986)).  In Howsam, the Court observed that the "question of arbitrability" encompasses "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." 537 U.S. at 83-84.

        The reinsurance treaties at issue provide that "[a]s a condition precedent to any right of action hereunder, any dispute arising out of this Contract shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire . . . ." (Wausau R. 56.1 ¶ 50.) "The members of the board of arbitration shall be active or retired disinterested officials of insurance or reinsurance companies." (Id.) "The board shall make its decision with regard to the custom and usage of the insurance and reinsurance business." (Id.)

        The dispute over whether Wausau's former lawyer may represent a party who is adverse to it does not arise out of the reinsurance treaties.  It principally relates to the risk that Wausau's confidential information—its property—may be used against it by its former lawyers.  It raises issues of a lawyer's professional responsibilities and is not within the customary expertise of insurance industry arbitrators.  Neither Wausau nor

Munich Re takes the position in this Court that the matter is within the scope of the arbitration clause. If the lawyer disqualification issue had been arbitrable, each side's right to arbitrate that issue has been waived by non-assertion of arbitrability in this action. See Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993). On these facts, this Court concludes that this gateway question is appropriately decided by the Court.

Procedural Posture

In a separate action in this district Munich Re moved to compel arbitration against National Casualty Company, another reinsurer which refused to pay the claim underlying this dispute. There, National Casualty argued that arbitration could not proceed without Wausau, and moved for an injunction preventing Munich Re from pursuing that action until this disqualification action is resolved. In an Opinion and Order dated April 26, 2011, Judge Sidney Stein denied the motion for an injunction and granted Munich Re's motion to compel arbitration. Munich Reinsurance America, Inc. v. National Casualty Co., No. 10 Civ. 5728, 2011 WL 1561067 (April 26, 2011).

Each party in this action has moved for summary judgment and has opposed the other side's summary judgment motion. Each side has submitted a Local Rule 56.1 Statement. On each party's motion, I have reviewed the facts in a light most favorable to the non-movant, drawing every reasonable inference in its favor.

I note that Wausau's factual support comes principally from the Declaration and Supplemental Declaration of Mark C. Kareken, which he signs as "Lead Counsel" to Wausau, although he has not filed an appearance in this action. Many of the facts in Wausau's Rule 56.1 Statement do not appear to have support in Mr. Kareken's decla-

rations which principally attaches exhibits. (See, e.g., Wausau Rule 56.1 Statement at ¶¶ 100, 101, 108, 109, 116, 117.)

Undisputed Facts

    A.  The Prior Representation of Wausau by RFF

The law firm of RFF was retained by Wausau in or about January 2007 to represent Wausau in a reinsurance arbitration against Paladin Reinsurance Corporation ("Paladin"). The arbitration related to 19 facultative reinsurance certificates with Paladin as the reinsurer and Wausau as the reinsured. Paladin sought to collect repayment for amounts previously paid by Paladin under the 19 certificates on the ground that, at the time Paladin made the payments Wausau was, unbeknownst to Paladin, in breach of "the warranties of retention" contained in the certificates. An issue in the Paladin arbitration was the number of occurrences underlying the losses that Wausau had ceded to Paladin pursuant to the reinsurance agreements. As might be expected, RFF and Wausau engaged in confidential attorney-client communications in the course of the Paladin arbitration, including communications concerning another somewhat overlapping arbitration with Paladin. The matter was concluded on February 21, 2008 with the entry of the Order and Judgment of Judge Keenan of this Court confirming the award. Employers Insurance Company of Wausau v. Paladin Reinsurance Corporation, 08 Civ. 42 (JFK) (DE # 4).

    B.    The Present Representation of Munich Re by RFF adverse to Wausau

Between June 1979 and June 1986, Allianz Insurance Company ("Allianz") wrote two umbrella and four excess general liability policies in favor of the Roman Catholic Archdiocese of Los Angeles ("ALA"). During the same period, Munich Re issued seven facultative reinsurance certificates, reinsuring the six policies Allianz had

issued to ALA. In 2003 California's adopted a revival statute reviving certain previously stale claims of childhood sexual abuse. Thereafter, 508 clergy sexual abuse claims were brought against ALA. Ultimately, ALA and its insurers, including Allianz, agreed to resolve all 508 claims for a payment of $660,000,000 with the Allianz share at $62,000,000. Allianz took the position that the claims arose from one occurrence per year because ALA was alleged to have been liable for a failure to supervise the individual clergy members.

Munich Re's share, as a reinsurer of Allianz, was alleged by Allianz to be approximately $21,000,000. Munich Re challenged this on a variety of grounds, including the whether the occurrence per year position of Allianz was valid, whether Munich Re was obligated to "follow" the Allianz settlement, whether the settlement was reasonable and in good faith, the number of occurrences at issue, the trigger of coverage, the premises/location limitation in the policy and an "anti-stacking" provision. Munich Re and Allianz reached an agreement by which Munich Re would pay $17,500,000 to resolve its liability in full.

In 1978, Wausau had entered into a reinsurance contract in which it reinsured a predecessor to Munich Re for the period July 1, 1977 to July 1, 1982 (the "77-82 Treaty"). The parties entered into a similar agreement for the period July 1, 1982 to July 1, 1985 (the "82-85 Treaty").

In October 2008, Munich Re submitted billings to Wausau under the 77-82 Treaty and the 82-85 Treaty with respect to Munich Re's settlement with Allianz. Wausau has disputed its liability to Munich Re. On April 8, 2010 Munich Re, represented by RFF, demanded arbitration against Wausau under the two treaties. Wau-

sau promptly objected to RFF's representation of Munich Re and commenced the present action.

Legal Standards

A court's authority "to disqualify attorneys derives from [its] inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quoting Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). The court should "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." Id. (quotations and citations omitted). See Arista Records LLC v. Lime Group LLC, 2011 WL 672254, *4 (S.D.N.Y. Feb 22, 2011). The legal principles governing the motion are not in dispute. See Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir. 1983) ("Evans"); Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978) ("Cook"); Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562 (2d Cir. 1973). See also R-T Leasing Corp. v. Ethyl Corp., 484 F. Supp. 950 (S.D.N.Y. 1979), aff'd mem. 633 F.2d 206 (2d Cir. 1980) (table); T. C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953) (Weinfeld, J.).

A district court should be mindful that a disqualification motion might be used as tactical device to delay a case, and impose upon an adversary the costs of defending an issue collateral to the merits of a case. Armstrong v. McAlpin, 625 F.2d 433, 437 (2d Cir. 1980) (en banc), vacated on other grounds, 449 U.S. 1106 (1981). The rule governing disqualification of an attorney based upon a former representation of an adverse client arises out of the ongoing duty to preserve client confidences, even after the attorney-client relationship has ended. See, e.g., Bd. of Ed. of City of New York v. Nyquist,

590 F.2d at 1246. "The important interests that underlie the attorney-client privilege are eroded if counsel is permitted to proceed with a case knowing the protected confidences of the opposing client." Miroglio, s.p.a. v. Morgan Fabrics Corp., 340 F. Supp. 2d 510, 512 (S.D.N.Y. 2004). Improper use of a client's confidences may undermine the fairness of the proceeding.

Judge Weinfeld's test for determining whether an attorney's former representation of a client requires disqualification has been adopted by the Second Circuit. See Emle Industries, Inc. v. Patentex, Inc., 478 F.2d at 570 (quoting T. C. Theatre Corp, 113 F. Supp. at 268-269). The standard does not require identity of issues but rather a substantial relationship between the matters at issue in the prior and present adverse representation. In Judge Weinfeld's words:

> I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

The law in this Circuit has evolved and the presumption that the attorney was likely to have had access to client confidences may be rebutted; the issue remains that of access rather than the content of confidential communications. The standard, as it has evolved, was summarized in Evans, 715 F.2d at 791, and has three elements:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

  (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Munich Re and RFF do not dispute that Wausau has satisfied the first element. Wausau is a former client of RFF and RFF is presently representing a client in a matter adverse to its former client. The second two elements are in dispute.

  "[A] high standard of proof" is required of the party who seeks to disqualify its former counsel. Evans, 715 F.2d 788 (quoting Cook, 569 F.2d at 739). See id. at 794 ("heavy burden of proving facts required for disqualification"). The substantial relationship test is fact intensive and there is no litmus test for its application. See Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751 (2d Cir. 1975) (collecting examples of its application.)[1] Comment [2] to Rule 1.9 of the New York Rules of Professional Conduct offers some useful guidance: "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client."

  Some guidance is found in the Restatement Third of Law Governing Lawyers § 132, comment d(iii). ("The substantial-relationship test . . . focus[es] upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation . . . . When the prior matter involved litigation, it will be conclusively presumed that the lawyer obtained confidential information about the issues in-

---

[1] In Cook, decided in 1978, the panel observed that "[p]ut more specifically, disqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.'" Id. at 740. Wausau notes that the panel's observation is not part of its holding. In this case, it is an immaterial point because, applying the ordinary meaning of the words "substantial relationship" without regard to whether the matter is "identical" or "essentially the same," disqualification is unwarranted.

volved in the litigation."). In this context, "issues" does not mean procedural issues common to litigation of this type but factual issues on which confidential information concerning the client was likely acquired. Id. ("A lawyer might also have learned a former client's preferred approach to bargaining in settlement discussions or negotiating business points in a transaction, willingness or unwillingness to be deposed by an adversary, and financial ability to withstand extended litigation or contract negotiations. Only when such information will be directly in issue or of unusual value in the subsequent matter will it be independently relevant in assessing a substantial relationship. ").

Wausau points out that the arbitration agreements in the Paladin matter and in the Munich Re matter require the selection of party arbitrators by each side who, in turn, select an umpire who serves as a third member of the panel. There are approximately 370 potential arbitrators recognized by either of two industry groups. Wausau asserts that in the course of the Paladin representation, RFF learned Wausau's thinking and predilections on arbitrators, including party arbitrators and umpires.

Most emphatically, this is not a relationship between two matters which is substantial. General "litigation thinking"—the general strategic plan or hopes of the lawyer and client on how best to pursue or defend claims—does not satisfy, without more, the substantial relationship test. "[I]f insight into a former client's general 'litigation thinking' were to constitute 'relevant privileged information,' then disqualification would be mandated in virtually every instance of successive representation." Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 394 (S.D.N.Y. 2010) (Judge Jones) (quoting Vestron, Inc. v. National Geographic Society, 750 F. Supp. 586, 595 (S.D.N.Y. 1990) (Magistrate Judge Francis)). Predilections and prejudices on the se-

lection of an arbitrator or umpire, gained from a small number of prior representations, is an insufficient ground for disqualification.

Wausau argues that the arbitration agreement in Paladin and in the present matter "provide minimal guidance to the arbitrators and umpire as to how the reinsurance arbitration is to be conducted." (Wausau R. 56.1 ¶ 88.) "[T]here effectively are no rules in reinsurance arbitration except for that for which the parties may provide and the limited basis upon which a court may vacate an arbitration award . . . ." (Id. ¶ 89.) From this premise it argues that the prior representation and the present representation require consideration of "arbitral matters" such as "standard for adjudication and burdens of proof, underwriting intent and contract interpretation, proper loss presentation, access to records, late notice, retention warranty, interest, costs and fees, and follow the fortunes/settlements." (Id. ¶¶ 101, 109.) It also cites the possibility of consolidation of claims in arbitration, a matter on which its preferences is known from the prior representation.

Wausau's argument proves too much. Its logical extension would mean that a lawyer's representation of a client in a reinsurance arbitration in the recent past would foreclose that lawyer from representing a party adverse to the former client in a subsequent arbitration. Given the presumed expertise necessary to competently pursue or defend reinsurance arbitrations, such a ruling would create a powerful incentive for parties to spread representations over multiple firms whose lawyers show promise and talent in the field of reinsurance law, in an effort to freeze out such lawyers from future adverse representations. The Circuit's disqualification jurisprudence—and Rule 1.9(a) of New York's Rules of Professional Responsibility—protects true client confidences and pro-

vides guidance to lawyers. See, e.g., Comment [3] to Rule 1.9 ("In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation."). That guidance informs lawyers of instances in which they would be foreclosed from a representation but it also informs them of the circumstances in which they may comfortably undertake a successive representation.[2]

Nor does Wausau succeed in demonstrating one or more factual issues that amount to a substantial relationship between the past and present matters. Wausau points out that in the prior and present matters there is an issue of whether a ceding company sustained an ultimate net loss which exceeds the retention. This, in turn, requires a determination of what is an occurrence because the retention applies per occurrence. But Wausau concedes, as it must, that this is common feature of reinsurance arbitration: "Thus, in every case, there are the questions of whether there was one occurrence or more than one . . . and whether the occurrence or each occurrence independently exceeds the retention after [certain deductions]." (Wausau Mem. in Opp. at 9.) This is no more remarkable than saying that in two actions for breach of contract there would likely be common issues of consideration, construction of the unambiguous terms of the contract, the foreseeability of the claimed loss, the damaged party's duty to mitigate and the absence of availability of punitive damages. That these issues are present in two breach of contract actions does not necessarily render them substantially related. See Comment [3]

---

[2] This case is factually distinguishable from Miroglio, s.p.a. v. Morgan Fabrics Corp., 340 F.Supp.2d at 513, in which the undersigned found that the substantial relationship between two successive representations was met:

"The degree of originality required before a fabric design becomes copyrightable and the extent of copying of a fabric design that constitutes infringement were questions within the scope of the prior representation and are issues that are likely to arise in this litigation."

to Rule 1.9 ("knowledge of <u>specific</u> <u>facts</u> gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." (emphasis added)).

The facts presented by Wausau do not rise to the level of an attorney acquiring his client's "playbook" for all claims of a particular type. For example, in <u>Ullrich v. Hearst Corp.</u>, 809 F. Supp. 229 (S.D.N.Y.1992) (Leval, J.), an attorney, who had worked for twenty years as in-house counsel to defendant, had "lengthy and extensive prior experience advising [defendant] on similar questions" which had "given him extensive access to confidential information pertaining to the general performance levels of other employees against whom these plaintiffs would be measured." <u>Id.</u> at 235. In that circumstance, the Court held that the attorney was disqualified from representing a plaintiff on an employment claim that had arisen after his departure from the defendant's employ. In <u>Ullrich</u>, far more than general litigation thinking was acquired; the attorney had acquired extensive confidential information about the former client's business practices relating to employment and discharge. Nothing in the present case rises to that level.

Finally, Wausau argues that if there is not a basis to disqualify under the <u>Evans</u> test (which largely parallels Rule 1.9(a)), then it should be precluded from representing Munich Re under Rule 1.9(c) which provides as follows:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or
> (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client.

The Circuit's standard for disqualification in successive representations is intended to protect client confidences and, indeed, is intended to avoid the need for a party to disclose or for a court to assess actual confidential information. See Restatement Third of Law Governing Lawyers § 132, comment d(iii). Expanding disqualification motions to a ground anchored exclusively to Rule 1.9(c) would require an assessment of the confidences and undermine the clarity of the present rule. Moreover, Wausau has presented no probative evidence that RFF has violated Rule 1.9(c). RFF is aware of its obligation, there is no demonstrated basis to believe that it would violate its obligation and, in the event it did violate its obligation, the violation would be answerable before the appropriate attorney disciplinary tribunal.

CONCLUSION

Plaintiff Wausau's motion for summary judgment is denied. Defendant Munich Re's motion for summary judgment is granted insofar as it seeks dismissal of the complaint. All other relief requested by any party is denied.

The counterclaim remains pending. In all events, the Clerk will refrain from entering judgment and the Court will retain jurisdiction over this action pending the completion of the underlying arbitration, in order to resolve any non-arbitrable disputes that may arise relating to the representation of Munich Re by RFF.

SO ORDERED.

Dated: New York, New York
       May 13, 2011

P. Kevin Castel
United States District Judge